# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAN BOGER on behalf of himself and others similarly situated, | : : : |
| Plaintiff, | : Case No. : |
| v. | : : : |
| BLACK TIE TRANSFERS, INC. and THE BLU' GROUP LLC. | : : : |
| Defendants. | : : |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiff Dan Boger ("Mr. Boger") ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. In violation of the TCPA, The Blu' Group LLC ("Blu' Group") hired Black Tie Transfers, Inc. ("Black Tie") to originate new customers, and Black Tie made telemarketing calls to a cellular telephone number of Mr. Boger for the purposes of advertising Blu' Group goods and services using an automated dialing system, which is prohibited by the TCPA.

3. The Plaintiff never consented to receive the call, which was placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on

behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendant.

4. A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5. Plaintiff Robert W. Clough, II is a resident of the state of New Hampshire.

6. Defendant The Blu' Group LLC is a Virginia corporation that conducts business in this District. The Blu' Group's registered agent is Registered Agents, Inc., 4445 Corporation Lane, Suite 264, Virginia Beach, VA 23462.

7. Black Tie is a Massachusetts corporation with its principal place of business in Boston, MA. Black Tie engages in telemarketing nationwide, including into this District. Black Tie's registered agent is Thomas L. Crain, 177 Huntington Ave., 17th Floor, Boston, MA 02115.

## Jurisdiction & Venue

8. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District as the telemarketing calls that gave rise to the Plaintiff's claims were made from this District.

## The Telephone Consumer Protection Act

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . .

can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do Not Call Registry

11. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

12. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

The TCPA Prohibits Automated Telemarketing Calls

13. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

14. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

16. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

**Factual Allegations**

17. Blu' Group offers merchant loans and business financing.

18. To generate new clients, Blu' Group relies on telemarketing.

19. However, Blu' Group's contact with the potential new customers is limited, and the telemarketing is conducted by third parties.

20. One of Blu' Group's new strategies for telemarketing involve hiring third parties that make use of an automatic telephone dialing system ("ATDS") to solicit potential customers through the use of a predictive dialer.

21. Blu' Group, and its vendors, including Black Tie engages this use of this equipment because it allows for thousands of automated calls to be placed at one time, but its

telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone.

22. Through this method, Blu' Group and Black Tie shifts the burden of wasted time to the consumers it calls with unsolicited messages.

Call to Mr. Boger

23. Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

24. Mr. Boger's telephone number, (703) 328-XXXX, is assigned to a cellular telephone service.

25. Mr. Boger placed his cellular telephone number, (703) 328-XXXX, on the National Do Not Call Registry more than five years ago.

26. Despite taking the affirmative step of registering his telephone number on the National Do Not Call Registry, Black Tie placed an automated telemarketing call to him on at least July 27, 2017.

27. The Caller ID that displayed on the telemarketing call was 808-491-6174.

28. When contacting that number, there was a lengthy pause and a click before a live individual came on the line, which indicated to the Plaintiff that the call was made using an ATDS.

29. When the Plaintiff finally connected with a live individual, he was solicited for an offer for a loan for his business, that he neither requested or needed.

30. The content of the call was generic, consistent with an *en masse* dialing campaign.

31. Mr. Boger was then transferred to a "Barry Parker" with the Defendant Blu' Group, who gave the company's website and confirmed that Black Tie had made the call for them.

32. Other individuals have complained about receiving solicitation calls from the same Caller ID number:

> **Chris**
> 2 Aug 2017
> Business loan cold call
>
> **FLA**
> 3 Aug 2017 | 2 replies
> So far 4 calls from this number today. I don't know anyone in Hawaii so haven't bothered to answer, dam annoying!
>
> **IL** 3 Aug 2017 | 1 reply
> 6 calls in last 24 hours. I've ignored them all.

*See* http://800notes.com/Phone.aspx/1-808-491-6174 (last visited August 18, 2017).

33. Furthermore, when Mr. Boger contacted Black Tie they blamed the call to him on "the server dialing you".

34. Based on the foregoing, it is believed that the call to Mr. Boger was made with an ATDS.

35. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

36. Moreover, these calls injured plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff and the class.

37. Finally, the calls were believed to be made without the consent of the called party. In fact, Mr. Boger contacted Blu' Group and Black Tie prior to the filing of the lawsuit, and did not receive any evidence that he consented to receive these calls.

**Blu' Group's Liability for the Telemarketing Call**

38. Blu' Group is a "person," as defined by 47 U.S.C. § 153(39).

39. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

40. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

41. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Blu' Group may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

42. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

43. Blu' Group is legally responsible for ensuring that Black Tie complied with the TCPA, even if Blu' Group did not itself make the calls.

44. By hiring a company to make calls on its behalf, Blu' Group "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

45. Similarly, by accepting these contacts, the company that Black Tie hired "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Blu' Group, as described in the Restatement (Third) of Agency. As such, Black Tie is an agent of Blu' Group.

46. In fact, Mr. Parker at Blu' Group informed Mr. Boger explicitly that Black Tie made the outbound calls on their behalf.

47. Moreover, Blu' Group maintained interim control over Black Tie's actions.

48. For example, Blu' Group had absolute control over whether, and under what circumstances, it would accept a customer.

49. Furthermore, Blu' Group had day-to-day control over Black Tie's actions, including the ability to prohibit it from using an ATDS to contact potential customers of Blu' Group. Blu' Group failed to make such an instruction to Black Tie, and as a result, is liable for Black Tie's conduct.

50. Additionally, Blu' Group restricted the geographic location that Black Tie could promote Blu' Group.

51. Blu' Group also gave interim instructions to Black Tie by providing the volume of calling and leads it would purchase.

52. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such

information." *Id.* at 6592-593 (¶ 46).  Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## Class Action Allegations

53. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a Classes of all other persons or entities similarly situated throughout the United States.

54. The Classes of persons Plaintiff proposes to represent is tentatively defined as:

BLU' GROUP CLASS

> All persons within the United States: (a) Blu' Group and/or a third party acting on their behalf, including, but not limited to, Black Tie, made one or more non-emergency telephone calls; (b) promoting Blu' Group products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of filing this Complaint to trial.

BLACK TIE CLASS

> All persons within the United States: (a) Black Tie and/or a third party acting on their behalf, including, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) using an automatic telephone dialing system or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

55. Excluded from the Classes are the Defendant, and any entities in which the Defendant have a controlling interest, the Defendant' agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

56. The Classes as defined above is identifiable through phone records and phone number databases.

57. The potential Classes members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individual a day. Individual joinder of these persons is impracticable.

58. Plaintiff is a member of the proposed Classes.

59. There are questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

   a. Whether Defendants violated the TCPA by using automated telemarketing to call cellular telephones;

   b. Whether Defendants placed calls without obtaining the recipients' prior consent for the call;

   c. Whether the Plaintiff and the Classes members are entitled to statutory damages because of Defendants' actions.

60. Plaintiff's claims are typical of the claims of Classes members. Plaintiff's claims, like the claims of the Classes arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

61. Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Classes, he will fairly and adequately protect the interests of the Classes, and he is represented by counsel skilled and experienced in Classes actions, including TCPA class actions.

62. Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

63. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

64. The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

65. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**Legal Claims**

**Count One:**
**Violation of the TCPA's Automated Calling provisions**

66. Plaintiff Boger incorporates the allegations from all previous paragraphs as if fully set forth herein.

67. The foregoing acts and omissions of the Defendants constitute violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS and/or artificial or prerecorded voice.

68. As a result of the Defendants violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or

prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B). The Court may award up to $1,500 if the violation was found to be "knowing or willful". *Id.*

69. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

## Count Two:
## Violation of the Maryland Telephone Consumer Protection Act

70. Plaintiff Boger incorporates the allegations from all previous paragraphs as if fully set forth herein.

71. The foregoing acts and omissions of the Defendants constitute violations of the Maryland Telephone Consumer Protection Act, Md. Code Ann. Com. Law §§ 14-3201, *et seq.*, ("Maryland TCPA") which prohibits a person from violating the TCPA. Here, as alleged above, the Defendants violated to the TCPA by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS and/or artificial or prerecorded voice.

72. As a result of the Defendants violations of the Maryland TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to Md. Code Ann. Com. Law § 14-3202(b)(2)(i) as well as their attorneys fees pursuant to Md. Code Ann. Com. Law § 14-3202(b)(1).

**Relief Sought**

For himself and all class members, Plaintiff request the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. A declaration that Blu' Group and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Blu' Group and/or its affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F. An award to Plaintiff and the Classes of damages, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff request a jury trial as to all claims of the complaint so triable.**

> PLAINTIFF,
> By his attorneys
>
> */s/ Anthony I. Paronich*
> Edward A. Broderick
> Anthony I. Paronich
> Broderick & Paronich, P.C.
> 99 High St., Suite 304
> Boston, MA 02110
> (508) 221-1510
> anthony@broderick-law.com
>
> Matthew P. McCue
> The Law Office of Matthew P. McCue
> 1 South Avenue, Suite 3
> Natick, Massachusetts 01760
> (508) 655-1415
> mmccue@massattorneys.net